JM:DAS/JEG
F.#2010R00022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

AKIN AYORINDE,
HERVIN HENRY,
ANTHONY ONUA,
UMANA OTON,
MAX SHIMBA,
JOHN STAR,
ANTHONY SUAZO,
    also known as "Hector Suazo,"
JOSE VASQUEZ,
MARISOL VASQUEZ and
MOISES VASQUEZ,

          Defendants.

- - - - - - - - - - - - - -X

I N D I C T M E N T

Cr. No. _____
(T. 18, U.S.C., §§
981(a)(1)(C), 982(a)(2)A),
1343, 1344, 1349, 2 and
3551 et seq.; T. 21,
U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

### INTRODUCTION

      At all times relevant to this Indictment, unless otherwise indicated:

      1.   The defendants defrauded various lending institutions by obtaining mortgages on properties (the "Property" or "Properties") located in the Eastern District of New York and elsewhere through fraudulent means, including by falsifying mortgage loan applications, appraisals, title reports and other documents.  That false information made the borrowers appear to be more creditworthy, and falsely enhanced the purported value of

the Properties.  As a result, the lenders were fraudulently
induced to issue mortgage loans secured by the Properties.  The
defendants executed the scheme by using corporate entities
("Straw Corporations") and individuals ("Straw Buyers") to
conceal the true ownership of the Properties.  The total amount
of loans that were fraudulently obtained by the defendants
exceeds $10 million.

I.   The Defendants

        2.   The defendant AKIN AYORINDE was an attorney
licensed to practice law in the State of New York.  AYORINDE was
also a real estate investor who used multiple Straw Corporations
and Straw Buyers to purchase and sell some of the Properties.
AYORINDE acted as an attorney representing Straw Buyers and Straw
Corporations in fraudulent real estate transactions with respect
to some of the Properties.

        3.   The defendant ANTHONY ONUA was an attorney
licensed to practice law in the State of New York.  ONUA was also
a real estate investor who used multiple Straw Corporations and
Straw Buyers to purchase and sell some of the Properties.  ONUA
acted as an attorney representing Straw Buyers, Straw
Corporations and lenders in fraudulent real estate transactions
with respect to some of the Properties.

        4.   The defendant JOHN STAR was a real estate broker
licensed in the State of New York.  STAR was also a real estate

2

investor, who used multiple Straw Corporations and Straw Buyers to purchase and sell some of the Properties.

5.      The defendant HERVIN HENRY was a real estate broker licensed in the state of New York.  HENRY assisted ONUA and AYORINDE with various aspects of the purchase and sale of some of the Properties.  Among other things, HENRY recruited Straw Buyers to participate in fraudulent transactions, and permitted AYORINDE and ONUA to place some of the Properties in the names of a corporation that HENRY controlled.

6.      The defendant MAX SHIMBA was a paralegal employed by ONUA.  SHIMBA often acted as the representative for ONUA at the closings for some of the Properties and, acting at ONUA's direction, SHIMBA falsified various documents in connection with some of the Properties.

7.      The defendant UMANA OTON was an attorney licensed to practice in the State of New York.  OTON frequently represented Straw Buyers or mortgage lenders at real estate closings for the Properties.

8.      The defendants JOSE VASQUEZ and MOISES VASQUEZ owned and operated Greater New York Mortgage ("Greater New York"), a mortgage broker in Brooklyn, New York.  JOSE VASQUEZ and MOISES VASQUEZ submitted mortgage applications and other paperwork containing false and fraudulent information to banks

and mortgage lenders in an effort to obtain mortgages secured by the Properties.

9. The defendant MARISOL VASQUEZ owned and operated Silverline Abstract, a title closing company located next door to Greater New York. MARISOL VASQUEZ and others created falsified title reports for real properties, which were used in connection with mortgage applications brokered by Greater New York. MARISOL VASQUEZ also served as a title closer in connection with mortgage applications brokered by Greater New York, in which falsified title reports were submitted to lenders.

10. The defendant ANTHONY SUAZO, also known as "Hector Suazo," was a real estate appraiser. SUAZO created falsified appraisals for real properties, which were used in connection with mortgage applications brokered by Greater New York.

II. The Lenders

11. American Home Mortgage ("AHM") was a wholesale mortgage lender doing business throughout the United States, including in New York.

12. BNC Mortgage was a wholly-owned subsidiary of Lehman Brothers ("Lehman"), a federally chartered bank, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC").

13. Fremont Investment and Loan ("Fremont") was a bank, the deposits of which were insured by the FDIC.

4

14.    WMC Mortgage was a wholly-owned subsidiary of GE
Money Bank ("GE"), a federally chartered bank, the deposits of
which were insured by the FDIC.

III.  The Fraudulent Scheme

15.    The defendants executed the fraudulent scheme
through a two-step process.  First, AYORINDE, ONUA or STAR
purchased a Property through either a Straw Buyer or a Straw
Corporation ("the First Sale").  Second, AYORINDE, ONUA or STAR
arranged for the Straw Corporation or Straw Buyer to sell the
Property to a Straw Buyer at artificially-inflated prices ("the
Second Sale").  The Second Sale typically occurred shortly after
AYORINDE, ONUA or STAR had acquired the Property at the First
Sale.  The Second Sale was financed with a mortgage fraudulently
obtained from a bank or lending institution.

16.    The Straw Buyers generally were individuals with
good credit scores, but with income and assets that were
insufficient to secure a mortgage loan.

A.    The Fraudulent Mortgage Applications

17.    JOSE VASQUEZ and MOISES VASQUEZ, through Greater
New York, prepared and submitted many of the fraudulent loan
applications for the Straw Buyers.  Among other things, the
mortgage applications prepared by Greater New York misrepresented
the Straw Buyers' income, assets and employment.

5

18.   Some of the applications claimed that the Straw Buyer earned significant income working for a company controlled by HENRY.   In fact, none of the Straw Buyers worked for HENRY or any of HENRY'S companies.   When the lenders contacted HENRY to verify the Straw Buyers' employment information, HENRY falsely verified the information contained on the mortgage application. AYORINDE and ONUA made payments to HENRY in exchange for his assistance in the fraudulent scheme.

19.   Because some of the Properties were multi-family homes that included rental units, the loan applications also frequently included falsified lease agreements and other false documentation designed to show that the Properties generated substantial rental income.

B.   The Fraudulent Appraisals

20.   SUAZO and others regularly provided fraudulently inflated appraisals of some of the Properties to Greater New York in exchange for higher-than-normal fees for the appraisal work.

21.   These false appraisals were provided to the lenders who issued the loans to the Straw Buyers.   The lenders issued loans based on these inflated appraisals, which made the Properties appear more valuable, and therefore justified a higher loan amount.

6

C.    The Fraudulent Title Reports

22.   Banks and mortgage lenders generally required
title reports to show that the seller owned the property, and to
evaluate the current proposed sale price in the context of
previous sales over time.  The true title reports for the
Properties reflected that the First Sale had occurred very
recently, and at a much lower price than the Second Sale.  This
difference in price would have alerted the lender to the fact
that the Second Sale price was artificially inflated.

23.   SHIMBA, acting at the direction of ONUA, created
fraudulent title reports using title abstract companies owned and
controlled by ONUA.  In addition, MARISOL VASQUEZ created
fraudulent title reports using her title closing company,
Silverline Abstract.  These altered title reports made it appear
that the First Sale had occurred at an earlier date, when in fact
the First Sale had occurred very close in time to the Second
Sale, in some instances, on the same day.  This alteration
therefore made it appear plausible that improvements had been
made on the Property during the time between the First Sale and
the Second Sale.  As a result, the fraudulent title reports,
combined with the falsified appraisals, induced the lenders into
issuing a loan which was substantially in excess of the true
value of the Properties.

D.    The Closings

24.    Banks and mortgage lenders typically issued a loan for less than the full amount of the sale price of the Property. The difference between the full sale price and the loan was generally paid by the purchaser to the seller as a down payment. In closings for the Properties, AYORINDE, ONUA, SHIMBA and others prepared and caused to be prepared falsified checks designed to show that a down payment had occurred, when in fact it had not. At the closings, AYORINDE, ONUA, OTON and SHIMBA signed documents falsely attesting that they had inspected the original down payment check and verified its accuracy.

25.    AYORINDE, ONUA and OTON frequently served as attorneys for the Straw Corporation or Straw Buyer at the closings for the Properties.  ONUA and OTON also frequently served as attorneys for the lender at the closings for the Properties.  Although the Properties were generally held in the names of a Corporation or Straw Buyer, the Properties were controlled by AYORINDE, ONUA or STAR.   AYORINDE, ONUA and OTON were aware that there were fraudulent misrepresentations made to the lenders in connection with the closings.

26.    After a closing was completed and the loan had been issued, AYORINDE, ONUA or STAR would take control of the proceeds of the loan.  AYORINDE, ONUA and STAR initially made the monthly mortgage payments on the Properties.  They eventually

8

stopped making these payments, and the Properties went into foreclosure.

### E.   Theft of Loan Proceeds

27.   When a property was sold or a mortgage was refinanced, the lender issuing the new loan usually wired the proceeds to the closing attorney, who in turn sent a portion of the proceeds to pay off the pre-existing mortgage.

28.   AYORINDE and ONUA exploited this system during the course of the fraudulent scheme.  When AYORINDE and ONUA arranged for the Second Sale, they obtained a mortgage on behalf of a Straw Buyer, using the fraudulent means described above.  The portion of the proceeds of the mortgage obtained for the Second Sale should have been used to pay off the mortgage from the First Sale.  Instead, however, AYORINDE and ONUA stole the entire proceeds of the mortgage issued for the Second Sale.

29.   To conceal and thereby perpetuate the fraudulent scheme, AYORINDE and ONUA caused monthly payments to be made on the mortgages issued in connection with both the First Sale and the Second Sale.  Thus, the lender issuing the mortgage for the First Sale remained unaware of the fact that the Property had been sold again at the Second Sale.

9

<u>COUNT ONE</u>
(Conspiracy to Commit Bank and Wire Fraud)

30.   The allegations contained in paragraphs 1 through 29 are realleged and incorporated as if fully set forth herein.

31.   In or about and between January 2005 through May 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AKIN AYORINDE, HERVIN HENRY, ANTHONY ONUA, UMANA OTON, MAX SHIMBA, JOHN STAR, ANTHONY SUAZO, also known as "Hector Suazo," JOSE VASQUEZ, MARISOL VASQUEZ and MOISES VASQUEZ, together with others, did knowingly and intentionally conspire to:

a.    execute a scheme and artifice to defraud Fremont; GE through its subsidiary, WMC Mortgage; and Lehman, through its subsidiary, BNC Mortgage, all financial institutions, and to obtain moneys, funds and credits owned by and under the custody and control of said financial institutions by means of materially false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1344; and

b.    devise a scheme and artifice to defraud AHM and others, and to obtain money and property from AHM and others by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate commerce, writings,

10

signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
(Bank Fraud - 89 Madison Street, Brooklyn, New York)

32.   The allegations contained in paragraphs 1 through 29 are realleged and incorporated as if fully set forth herein.

33.   On or about March 28, 2005, a closing was held for a mortgage loan issued by Fremont and secured by 89 Madison Street, Brooklyn, New York.  This closing was held in the offices of the defendant UMANA OTON in Brooklyn, New York.

34.   In or about and between February 2005 and April 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AKIN AYORINDE, HERVIN HENRY, ANTHONY ONUA, UMANA OTON and MAX SHIMBA, together with others, did knowingly and intentionally execute a scheme and artifice to defraud Fremont, and to obtain money, funds and credits owned by and under the custody and control of said financial institution by means of materially false and fraudulent pretenses, representations and promises.

(Title 18, United States Code, Sections 1344, 2 and 3551 et seq.)

COUNT THREE
(Bank Fraud – 225-05 Murdock Avenue, Queens, New York)

35.  The allegations contained in paragraphs 1 through 29 are realleged and incorporated as if fully set forth herein.

36.  In or about and between May 2006 and June 2006, an application for a mortgage loan issued by GE, through its subsidiary, WMC Mortgage and secured by 225-05 Murdock Avenue, was prepared in the offices of Greater New York in Brooklyn, New York.  This application contained fraudulent misrepresentations, as set forth above.

37.  In or about and between January 2005 and June 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY ONUA, MAX SHIMBA, JOHN STAR, JOSE VASQUEZ and MOISES VASQUEZ, together with others, did knowingly and intentionally execute a scheme and artifice to defraud GE, through its subsidiary, WMC Mortgage, and to obtain money, funds and credits owned by and under the custody and control of said financial institution by means of materially false and fraudulent pretenses, representations and promises.

(Title 18, United States Code, Sections 1344, 2 and 3551 et seq.)

12

## COUNT FOUR
(Bank Fraud – 332 Malcolm X Boulevard, Queens, New York)

38.   The allegations contained in paragraphs 1 through 29 are realleged and incorporated as if fully set forth herein.

39.   In or about and between January 2006 and February 2006, an application for a mortgage loan issued by Lehman, through its subsidiary BNC Mortgage and secured by 225-05 Murdock Avenue, was prepared in the offices of Greater New York in Brooklyn, New York.  This application contained fraudulent misrepresentations, as set forth above.

40.   In or about and between January 2006 and February 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AKIN AYORINDE, ANTHONY ONUA, MAX SHIMBA, JOHN STAR, ANTHONY SUAZO, also known as "Hector Suazo," JOSE VASQUEZ and MOISES VASQUEZ, together with others, did knowingly and intentionally execute a scheme and artifice to defraud Lehman, through its subsidiary BNC Mortgage, and to obtain money, funds and credits owned by and under the custody and control of said financial institution, by means of materially false and fraudulent pretenses, representations and promises.

(Title 18, United States Code, Sections 1344, 2 and 3551 et seq.)

13

COUNTS FIVE AND SIX
(Wire Fraud - 222 Spencer Street, Brooklyn, New York)

41.   The allegations contained in paragraphs 1 through 29 are realleged and incorporated as if fully set forth herein.

42.   In or about and between June 2006 and September 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AKIN AYORINDE, HERVIN HENRY, ANTHONY ONUA, MAX SHIMBA, JOSE VASQUEZ and MOISES VASQUEZ, together with others, did knowingly and intentionally devise a scheme and artifice to defraud AHM, and to obtain money and property from AHM by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, as set forth below for each count:

| Count | Date | Originator | Beneficiary | Description |
|-------|------|------------|-------------|-------------|
| FIVE | 8/2/06 | DeutscheBank Account of AHM Melville, NY | Fed Wire East Rutherford, NJ | Wire transfer $779,533.33 |
| SIX | 8/2/06 | DeutscheBank Account of AHM Melville, NY | Fed Wire East Rutherford, NJ | Wire transfer $188,811.56 |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

14

## CRIMINAL FORFEITURE ALLEGATION

43. The United States hereby gives notice to the defendants AKIN AYORINDE, HERVIN HENRY, ANTHONY ONUA, UMANA OTON, MAX SHIMBA, JOHN STAR, ANTHONY SUAZO, also known as "Hector Suazo," JOSE VASQUEZ, MARISOL VASQUEZ and MOISES VASQUEZ that, upon his or her conviction of any of the above-charged offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2)(A) and Title 28, United States Code, Section 2461(c), of any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

44. If any of the above-described forfeitable property, as a result of any act or omission of the defendants AKIN AYORINDE, HERVIN HENRY, ANTHONY ONUA, UMANA OTON, MAX SHIMBA, JOHN STAR, ANTHONY SUAZO, also known as "Hector Suazo," JOSE VASQUEZ, MARISOL VASQUEZ and MOISES VASQUEZ:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

15

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C), 982(a)(2)(A); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
BENTON J. CAMPBELL
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

16